16 P.(2d) 399

**COLCOTT v. SUTHERLAND.**
No. 3672.

Supreme Court of New Mexico.
Nov. 17, 1932.

W. A. Sutherland, of Las Cruces, for appellant.

J. Benson Newell, of Las Cruces, for appellee.

WATSON, J.

This is an appeal from a judgment for plaintiff in an ejectment action.

The complaint alleged that plaintiff was entitled to the possession of a certain 28-acre tract, and that defendant had entered and was unlawfully holding a part thereof, described as "about two acres in the southeast corner of that portion of the above described tract which lies north of the drain ditch, which runs through said tract in an easterly and westerly direction, and close to the public highway leading by said premises to Rincon."

Defendant filed an answer and cross-complaint. By his first answer, he admitted possession of the 2-acre tract, describing it as 415 feet long, north and south, by 210 feet wide, but denied that his possession was unlawful. Further answering, he alleged affirmative facts in attempted justification of his possession. These same affirmative facts were adopted in his cross-complaint; upon which he prayed that plaintiff be declared estopped from denying his possessory right, and prayed further that plaintiff be required to convey the 2-acre tract to him by way of specific performance of contract.

Plaintiff moved for judgment on the pleadings. Upon announcement by the court that he would sustain that motion, defendant tendered and moved for leave to file a so-called supplemental answer and cross-complaint. Such leave was refused, and the court thereupon rendered final judgment upon the original pleadings.

The affirmative facts originally pleaded by defendant are substantially as follows: Having chosen the land in question as a desirable gin site, he learned that plaintiff was the owner of it and that one Price "looked after" the property, but was without authority to sell it.' Obtaining plaintiff's temporary address from Price, defendant had with him the following telegraphic correspondence:

"6 September 1928

"T. H. Colcott, Care Continental Oil Company, Denver, Colorado

"Desire to erect gin at Rincon and would like to purchase two acres from you on road to bridge next to canal. Stop. Please wire me Lascruces what you will take for land and if same is incumbered. Stop. Haste is necessary.

"Paid.                    W. A. Sutherland."

"Douglas, Wyo. Sep. 7, 1928

"W. A. Sutherland, Las Cruces, New Mexico

"Your wire reforwarded several times just received. Stop. Not clear whether you referring to two acres corner on south of irrigation canal or north side in alfalfa field

next to drainage ditch. Kindly advise Gladstone Hotel, Casper, Wyoming. Will then wire you immediately.

"T. H. Colcott    727 A"

"8 September 1928

"T. H. Colcott, Gladstone Hotel, Casper, Wyoming.

"Your telegram seventh I desire two acres in southeast corner of tract north of drainage canal and west of road from new bridge to Rincon. In view of public benefit trust you can make favorable price. Stop. Have consulted with Mr. Price.

"Paid.             W. A. Sutherland."

"Butte, Montana, 10 59 A Sep. 10, 1928

"W. A. Sutherland Las Cruces, New Mexico

"Acknowledging Casper wire will sell two acres specified southeast corner north half farm three hundred dollars providing you give me option purchase this land should you decide move gin in future and also erect substantial fence around your acreage. Stop. Farm paid for unincumbered. Stop. Intend building, beautifying and living on north half farm within several years consequently much prefer sell northeast corner south half farm two hundred and fifty dollars. Stop. Address until October first Finlen Hotel Butte Montana.

"Thos. H. Colcott    121 P"

From September 10th to October 8th, defendant was not finally decided as to whether he desired to acquire the property. On the latter date, having failed in efforts to ascertain plaintiff's then address, so that he might communicate with him, he notified Price that he would proceed to erect the gin, and Price measured off the 2-acre tract, set stakes at its corners, and defendant took possession of it and constructed his gin thereon at a cost of $25,000.

Thereafter he wrote to plaintiff as follows:

"14 January 1929

"T. H. Colcott, Special Representative Vacuum Oil Company, 61 Broadway, New York

"Dear Sir: I have been for some time trying to get in touch with you for the purpose of getting the papers fixed up with regard to the Rincon Valley gin site. I heard that you were in Rincon during my absence in California and I am sorry I missed you. I had been advised that you were expected after the holidays. At all events, as you are aware, I installed the gin on the site which you offered at $150 per acre, and as I took two acres, I owe you $300.00. If you desire to have me prepare the deed for your signature, I will be glad to do so and will send it to you for execution. You may then send it to the bank and instruct them to deliver it to me upon payment of the money due. The site chosen is 225 feet wide by 581 feet long.

"Owing to the delay of the man who furnished me the oil engine I was unable to get started till just about the end of the season, and this upset my plans somewhat, but everything will be in first class shape to go at the beginning of the next ginning season.

"Sincerely yours,

"W. A. Sutherland."

To this communication defendant had no reply, and had no word from plaintiff until served with the present complaint, filed February 15, 1929.

The tendered supplemental answer and cross-complaint pleads all of the facts originally pleaded. The affirmative facts, however, are no longer employed by way of answer, but solely by way of cross-complaint. To those facts the pleader has added one which he claims to have learned since the filing of the original pleading, viz. that Price, in measuring off and marking the 2-acre tract and putting defendant in possession thereof, did so "with full written authority from and at the direction of" plaintiff.

The stated grounds of the motion for judgment on the pleadings were (1) that defendant in his answer had failed to deny the material allegations of the complaint; (2) that the cross-complaint fails to allege facts constituting a cause of action for specific performance, it being affirmatively shown that no contract of sale had been entered into; and (3) that the affirmative relief sought by the cross-complaint constituted no defense to the complaint.

The record does not disclose the ground of the refusal of leave to file the supplemental pleading. Appellee merely suggests that "it was tendered * * * almost two years after the filing of the complaint * * * and quite apparently, then, merely as a dilatory plea."

■ Appellant presents the error as abuse of a discretion to grant or refuse leave. He does himself an injustice. It is not the occurrence of the new fact, but appellant's knowledge of it, that is alleged to have been subsequent to the commencement of his cross-suit. Such newly discovered but prior existing fact, according to the old equity practice, and under our Code, is properly presented by an amended, not a supplemental, pleading. Bancroft's Code Pl. § 456, et seq.; Sutherland, Code Pl., Pr. and Forms, § 773; Bliss on Code Pl. (3d Ed.) § 433. As pointed out by Mr. Justice Roberts, in Albright v. Albright, 21 N. M. 606, 157 P. 662, Ann. Cas. 1918E, 542, the New York Code is different. There can be no confusion under our Code. 1929 Comp. St. § 105-612, governs pleadings really supplemental. Pleadings amendatory are governed by other sections.

It may not be amiss to suggest here that, while the decision just cited correctly holds, following Missouri, that amended and supplemental pleadings are to be treated in "the same light," in respect to being entire (1929 Comp. St. § 105-614), the same is not true with respect to leave to "make" and discretion to "allow" (Id. § 105-612). Here, we have avoided confusion by omitting amended pleadings from the section which otherwise corresponds to Missouri R. S. 1929, § 825 (Mo. St. Ann. § 825).

■■ Likewise, the motion for judgment on the pleadings should be treated as a demurrer. It questions the sufficiency of the answer as a defense, and of the cross-complaint as a cause of action. 1929 Comp. St. §§ 105-411, 105-422, 105-405. By our Code of Civil

Procedure, a motion for judgment on the pleadings is indicated as available when a third attempt to state a cause of action or defense has been adjudged insufficient, Id. § 105-514; or after failure of a plaintiff to reply to new matter in the answer, Id. § 105-421.

Since a judgment on the pleadings forecloses amendment, motions therefor are not favored, and lie only when the pleading attacked cannot be cured by amendment, either because of inherent defect, or because of statutory limitation. Bancroft's Code Pleading, § 633; Sutherland, Code Pleading, Practice and Forms, § 1452. Technically, we think the motion not well taken. That will be of slight importance unless the sustaining of the motion resulted in defeating the liberal policy and provisions of the Code as to amendments. To avoid that, it has been held that, after the sustaining of the motion, and before entry of judgment, the right to amend may be claimed. Owens v. Moraine, 105 Okl. 285, 232 P. 818. Another means is to treat such a motion as this as a demurrer. That seems fair and practical, and such practice is forecast by Peterson v. Foley, 23 N. M. 491, 169 P. 300.

The present judgment will therefore be treated as a final judgment rendered upon the sustaining of a demurrer to the supplemental (amendatory) answer and cross-complaint, and the question is as to the sufficiency of that pleading.

Appellee, considering the amendatory pleading not before us, here argues the insufficiency of the original pleading. Upon its allega-

tions, he contends that the correspondence and conduct of the parties have not produced a contract capable of specific performance, because of uncertainty in two particulars, the description of the property, the subject-matter of the negotiations, and the price to be paid on repurchase under the reserved option.

█ If the matter were to be decided upon the original cross-complaint, the uncertainty of the description might present a serious obstacle to specific performance. But this difficulty yields completely to the amended pleading. Pursuant to the negotiations, and by his duly authorized agent, appellee measured and staked the tract in question and put appellant in possession. It is thus evident that the parties have agreed as to the description. Mundy v. Irwin, 20 N. M. 43, 145 P. 1080, Ann. Cas. 1918D, 713.

This matter of delivery and taking of possession in part performance of the contract has also an important bearing on the other feature of the case, the omission, in reserving the option, to stipulate the price on repurchase or a means of arriving at it. From that fact it would seem to follow that appellee deemed negotiation ended and a contract effected. He had reserved such option as he desired, and appellant had acquiesced in it—that, or he proceeded deliberately to entrap appellant, an inference not to be drawn avoidably.

█ The parties having thus agreed, what is the effect of the omission to stipulate the price for a repurchase? Appellee contends that it

results in incompleteness and uncertainty fatal to the remedy of specific performance. Appellant says there is no incompleteness or uncertainty, since the law's implication binds the parties to a reasonable price, and equity has means to determine it. This may be entirely sound. Pomeroy's Specific Performance (3d Ed.) § 148. We base decision, however, on other principles. We assume, but do not decide, that this is not such an option as equity would specifically enforce. Fry on Specific Performance (6th Ed.) § 353 et seq.; Pomeroy, § 148 et seq.; 36 Cyc. 595.

But this is not a suit for specific performance of the option. The contingency may never arise upon which appellee's right to repurchase is made to rest. If the contingency should arise, he may or may not desire to exercise the option. An option to repurchase is not an essential or usual condition of a contract between vendor and purchaser. When included, it is merely an incident of the particular contract. It is a subsidiary, if not a collateral, matter. As to such matters, even when entering into the price to be paid, equity is not so reluctant to resolve the uncertainty, to clear the way for specific performance. Fry, § 365, et seq.; Pomeroy, § 151.

If appellee had conveyed to appellant, the reservation of a void or unenforceable option of repurchase would not, we suppose, have invalidated the deed or the title. Should it have greater effect on appellant's equitable title? The facts pleaded do not permit the inference that appellee intended by further negotiation to clarify his option. He would not desire the inference that he acted in bad faith. Hence equity can give him exactly what he contracted for. Perhaps that is all he is entitled to, leaving to future determination the enforceability of his option. But appellant does not seek to hold him in that position. He invites the court to determine what is a reasonable price, and offers to accept a conveyance subject to appellee's enforceable option to repurchase at such price.

Before the change of possession and the expensive improvement, the parties might have been left where they were, without great injury to either. It is unnecessary to decide whether specific performance would have been proper at the behest of either. Now, there is no satisfactory alternative except to enforce the harsh consequences of appellee's legal title or to compel conveyance of that title to appellant. The former course must greatly injure appellant; the latter cannot greatly injure appellee. Under the facts as they now appear, equity should "strain its power" and should "endeavor by every means within the legitimate bounds of its jurisdiction" to enforce a complete performance, rather than acknowledge its incompetence to prevent great injustice. Fry, §§ 335, 367. This court is equally ready to proffer or withhold the remedy, as the one course or the other will prevent hardship, injustice, or unfairness. Kingston v. Walters, 14 N. M. 368, 93 P. 700; Chaplin v. Korber Realty, Inc., 29 N. M. 567, 224 P. 396.

By what we have said we have not intended to limit the discretion of the trial court as to the exact relief. Further pleading and

hearing may vary the facts. The law and precedents as to appropriate relief may be more fully presented than they have been here. Suffice it now to say that we deem the present result inequitable and erroneous.

The judgment will be reversed. The cause will be remanded, with a direction to vacate the order refusing leave to file the supplemental answer and cross-complaint, and to grant leave to file the same, with leave to appellee to plead thereto as he may be advised. It is so ordered.

BICKLEY, C. J., and SADLER and HUDSPETH, JJ., concur.

NEAL, J., did not participate.