**In the Matter of the ESTATE OF Tim H. BATES, Jr., Deceased.**

**Roberta B. BATES, Appellant,**

v.

**Tim H. BATES, III, Fiduciary of the Estate of Tim H. Bates, Jr., Deceased, Appellee.**

**No. 91–645.**

Court of Appeals of Iowa.

Sept. 29, 1992.

Mark S. Dickhute and Nancy Lawler Dickhute, Omaha, Neb., and Stephen W. Ruth, Davenport, for appellant.

Rex J. Ridenour of Dircks, Ridenour, Norman & Macek, Davenport, for appellee.

Considered by OXBERGER, C.J., and DONIELSON and HABHAB, JJ.

HABHAB, Judge.

Roberta Bates and Tim H. Bates, Jr. were formerly married to each other. During the marriage they purchased a house as joint tenants, with right of survivorship.

In 1979 the marriage was dissolved. The parties entered into a stipulation concerning the distribution of property. The dissolution decree adopted the stipulation. The decree provided:

> The petitioner [Roberta] shall be given possession of the homestead presently held in joint tenancy and that said homestead shall be placed on the real estate market for sale not later than the 15th day of January 1980. That all proceeds from the sale of the homestead shall be divided equally among the parties after deducting the mortgage on said homestead estimated at approximately $16,000 and any costs necessitated by said sale. . . .

Following the dissolution decree the house was placed on the market, but was never sold. Roberta retained possession of the house.

Tim died in 1989. Roberta made a claim against the estate for unpaid alimony, but later dropped the claim. The estate filed a counterclaim seeking a declaratory judgment that it owned a one-half interest in the former marital residence. The case then proceeded solely on the estate's counterclaim.

The district court entered a declaratory judgment favorable to the estate. The district court held that the 1979 dissolution decree severed the previous joint tenancy and converted the ownership of the house to a tenancy in common. Thus, because there is no right of survivorship in a tenancy in common, Tim's interest in the house survived his death and passed to his estate.

Roberta has appealed from the district court's declaratory judgment.

An action in probate to determine the ownership of property is triable as in

equity. *In re Estate of Sheimo,* 261 Iowa 775, 778, 156 N.W.2d 681, 683 (1968). Therefore, our review is de novo. *See In re Estate of Lemke,* 216 N.W.2d 186, 189 (Iowa 1974). We give weight to the trial court's findings, but are not bound by them. *Id.*

Roberta contends that because the dissolution decree did not specifically sever the joint tenancy, it continued until Tim's death, when she acquired the entire estate as the survivor. She claims an unequivocal expression of intent to sever is needed to terminate a joint tenancy.

■ The estate of joint tenancy is an estate held by two or more persons jointly with equal rights to share in its enjoyment during their lives and having as its distinguishing feature the right of survivorship. *Brown v. Vonnahme,* 343 N.W.2d 445, 451 (Iowa 1984). Thus, a joint tenant owns an undivided interest in the entire estate to which is attached the right of survivorship.

Iowa does not follow the "four unities" common law rule, which required a unity of time, title, possession, and interest in order to create (and continue) a joint tenancy. *In re Estate of Baker,* 247 Iowa 1380, 1384, 78 N.W.2d 863, 865 (1956). Under this rule, any act of a joint tenant which destroys either of these unities operates as a severance of the joint tenancy and extinguishes the right of survivorship. In Iowa the intent of the parties prevails. *Id.*

■ Joint tenants may sever a joint tenancy by mutual agreement. *Id.,* 78 N.W.2d at 867. In addition, a severance of a joint tenancy results when a contract for the sale of real estate is entered into by the joint tenants. *Id.,* 78 N.W.2d at 868. Further, a conveyance by one of the parties may also terminate a joint tenancy, *Keokuk Sav. Bank & Trust Co. v. Desvaux,* 259 Iowa 387, 392, 143 N.W.2d 296, 299 (1966). The involuntary conveyance or seizure of the interest of a joint tenant will sever the joint tenancy. *Frederick v. Shorman,* 259 Iowa 1050, 1059–60, 147 N.W.2d 478, 484 (1966).

The Iowa Supreme Court in *In re Baker's Estate,* 247 Iowa 1380, 78 N.W.2d 863,

867 (1956), cited with approval the following statement from Note, *Legal Consequences of the Severance of a Joint Tenancy,* 32 Iowa L.Rev. 539, 541 (1947):

A conversion of the joint tenancy into a tenancy in common may be effected by the concerted action of all joint tenants as well as by the act of one or less than all of them. Conduct or mutual agreement between joint tenants making disposition of the property may convert the joint tenancy into a tenancy in common, even though such conversion was uncontemplated.

Our supreme court in *Baker* further noted in particular two cases that supported the foregoing statement, *Re Wilford's Estate,* 11 Ch.Div. 267 (1879), and *In the Estate of Heys,* [1914], p. 192. In each of these cases, there is a holding that an agreement to make mutual wills was sufficient to effect a conversion of the joint tenancy into a tenancy in common. The Iowa Supreme Court then held at page 867:

If an agreement to make mutual wills effects a conversion with equal logic it can be said the same effect will result from a sale of all the interest of the parties to a joint tenancy by reason of a contract of sale.

■ There are no Iowa cases which directly address the issue before us—whether an agreement by the joint tenants to sell the property will sever a joint tenancy, if the property is never actually sold. We will therefore look to other jurisdictions.

The general rule appears to be that in divorce actions, the intent of the parties, if expressed by stipulation or express directive of the court, governs the termination of joint tenancies in marital property. *See Smith v. Smith,* 568 So.2d 838, 840 (Ala.Civ.App.1990); *Lutzke v. Lutzke,* 122 Wis.2d 24, 361 N.W.2d 640, 649 (1985); and *Renz v. Renz,* 256 N.W.2d 883, 886 (N.D. 1977).

In *Smith,* the parties' dissolution decree was entered pursuant to an agreement. 568 So.2d at 839. It provided property held in joint tenancy was to be sold within six months and the proceeds divided. *Id.* The

wife died before the house was sold. *Id.* The court determined the clear intent of the parties was that the dissolution decree would have the effect of severing the joint tenancy and creating a tenancy in common. *Id.* at 840.

In *Renz* also, the parties entered into a settlement agreement upon their divorce in which they agreed to sell property held in joint tenancy and split the proceeds. 256 N.W.2d at 884. The property was never actually sold. *Id.* The court concluded the parties had voluntarily severed the joint tenancy relationship, and created in themselves a tenancy in common. *Id.* at 886.

Roberta relies on the cases of *In re Estate of Woodshank*, 27 Ill.App.3d 444, 325 N.E.2d 686 (1975), and *Nichols v. Nichols*, 43 Wis.2d 346, 168 N.W.2d 876 (1969). However, in both of those cases the dissolution decree specifically provided that the property would remain in joint tenancy, but gave each party the right to sell. 325 N.E.2d at 688; 168 N.W.2d at 877. Thus, it would appear the parties intended the property to remain in joint tenancy, and the courts in those cases so found. *Id.*

In the present case, we conclude the stipulation between the parties to sell the property and divide the proceeds clearly manifests an intent on the part of the joint tenants to sever the joint tenancy. Our supreme court in the *Baker* case, 78 N.W.2d at 866, noted: "It has been held a contract or covenant to convey an interest which can be enforced in equity will operate to sever a joint tenancy."

We determine Roberta and Tim were tenants in common at the time of Tim's death. Therefore, the estate is entitled to an interest in one-half of the property as a tenant in common.

Roberta also contends the estate's claims are barred by the statute of limitations. We note the district court did not rule on this issue and Roberta did not file a motion pursuant to Iowa Rule of Civil Procedure 179(b). Therefore, this issue was not properly preserved for review and we will not consider it on appeal. *See Hsu v. Vet–A–Mix, Inc.*, 479 N.W.2d 336, 338 (Iowa App. 1991). But even if the issue had been properly preserved for appellate purposes, we find it to be without merit.

We affirm the decision of the district court.

AFFIRMED.